IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRUTON STEPHENS, SR. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-10-CV-0191-O-BD |
| | § | |
| CITY OF DALLAS | § | |
| | § | |
| Defendant. | § | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant City of Dallas (the "City") has filed a motion for summary judgment in this civil action brought by a former employee asserting a myriad of claims under federal and Texas law. For the reasons stated herein, the motion should be granted in part and denied in part.

I.

In 2003, Plaintiff Bruton Stephens, Sr., an African-American male, was hired by the City as a senior electronic technician in the Transportation Operations Division of the Public Works and Transportation Department. (*See* Def. MSJ App. at 454a, 1015 ¶ 13). Plaintiff was assigned to the Signal Maintenance Division, where his primary job duties included programming school zone flashers and repairing traffic signals. (*See id.* at 1015 ¶ 14). By 2007, plaintiff's direct supervisor, Robert Espinoza, designated plaintiff as his "lead technician." (*See* Plf. MSJ Resp. App. at 207-08; Def. MSJ App. at 1015 ¶ 13). In that capacity, plaintiff took on additional responsibilities, such as reviewing job tickets, preparing payroll, working with school personnel, and being "in charge" when Espinoza was out of the office. (*See* Plf. MSJ Resp. App. at 207-08, 314-15).

On December 29, 2008, Lisa Stevenson, one of plaintiff's co-workers, told plaintiff that Michael Driggars, a construction supervisor, had stolen City property. (*See* Def. MSJ App. at 58, 148, 1015 ¶ 13; Plf. MSJ Resp. App. at 78). Like plaintiff, Stevenson is African-American. (*See* Plf. MSJ Resp. App. at 408-09). Driggars is Caucasian. (*See* Def. MSJ App. at 57, 148). In January 2009, plaintiff filed a grievance with the City reporting the alleged theft and other issues of concern in the Signal Construction Division. (*See id.*).[1] Later that month, Alex Wong, the Program Manager of the Transportation Operations Division, made plaintiff solely responsible for cleaning sand and trash from the parking lot. (*Id.* at 179-181, 192, 195, 1015 ¶ 13; Plf. MSJ Resp. App. at 133, 360). Wong also reprimanded plaintiff for violating a policy that prohibited employees from parking their personal vehicles next to City vehicles. (*See* Def. MSJ App. at 88; Plf. MSJ Resp. App. at 278-79). Approximately one week after this reprimand, plaintiff filed another grievance when Wong refused to take disciplinary action against a Caucasian employee who allegedly operated a City vehicle without a valid driver's license. (*See* Def. MSJ App. at 394-96; Plf. MSJ Resp. App. at 409).

Both grievances were denied by Elizabeth Ramirez, Assistant Director of Public Works and Transportation, on February 24, 2009. (*See* Def. MSJ App. at 374-75, 397). Plaintiff appealed the denial of his first grievance to Rick Galceran, Director of Public Works and Transportation, on February 27, 2009. (*Id.* at 398-402). While that appeal was pending, Wong issued a "Letter of Counseling" to Driggars for loading material from City property to a personal vehicle without authorization. (*Id.* at 393). Galceran ultimately denied plaintiff's appeal, but asked the Dallas Police

---

[1] In his grievance, plaintiff reported that Driggars committed theft by removing wood and metal pipes from City property and placing them in his personal vehicle. (*See* Def. MSJ App. at 371). Plaintiff also accused Driggars of causing a disturbance in the workplace and showing favoritism to a co-worker, who was also his domestic partner. (*Id.* at 372).

Department to investigate the theft allegations against Driggars. (*Id.* at 377). As part of that investigation, plaintiff was asked to sign an "Acknowledgment," which states:

> I understand that I am involved in an investigation and may be asked to provide information. I will not discuss the investigation or the matters being investigated with my co-workers or other employees. Further, I agree to cooperate fully with the City of Dallas employees conducting the investigation and to be truthful and open with my responses during the course of the investigation. I understand that Human Resources will contact those parties having a need to know concerning this investigation, and that I am prohibited from conducting any form of independent investigation or interviews of employees or co-workers about the matters being investigated and/or about the matters outlined in my complaint letter dated February 27, 2009. I understand that failure to abide by these instructions may lead to disciplinary action, up to and including discharge.

(*Id.* at 377). Plaintiff refused to sign the Acknowledgment. (*Id.*).

On March 2, 2009, plaintiff sent an e-mail to Wong, Ramirez, and other managers complaining that Stevenson had been retaliated against for accusing Driggars of theft. (*See* Plf. MSJ Resp. App. at 114-15). Wong responded by reminding plaintiff that any personnel or work-related problems must be reported to his direct supervisor, Espinoza, and that the "[f]ailure to maintain the proper reporting procedure will subject you to disciplinary action." (*Id.* at 114). Ten days after plaintiff sent his email, Wong ordered Espinoza to strip plaintiff of his "lead technician" responsibilities and assign those duties to others. (*Id.* at 336; Def. MSJ App. at 415). Wong also required plaintiff to clean up the parking lot and retrieve temporary school flashers and sandbags from the field. (*See* Def. MSJ App. at 191-93, 272-73, 409, 427-29; Plf. MSJ Resp. App. at 357).

On March 30, 2009, plaintiff filed a charge of race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). (*See* Def. MSJ App. at 566). Plaintiff also filed a third grievance with the City complaining that his leadership position had been taken away,

that he was required to sweep the parking lot, and that he was told to remove portables from the field -- all as a result of race discrimination and retaliation. (*See* Def. MSJ App. at 406-07). Ramirez denied the grievance, but changed the flasher-retrieval and sandbag-retrieval procedures so that plaintiff was no longer required to perform those duties. (*Id.* at 408-10). Plaintiff appealed that decision to Galceran on May 6, 2009, (*see id.* at 411-13), and filed three more grievances accusing Wong and Driggars of race discrimination and retaliation. (*Id.* at 430-31, 436-37, 440-41).

On August 5, 2009, after Galceran denied his third grievance appeal and while his other grievances were still pending, plaintiff voiced his concerns of race discrimination and retaliation in a speech before the Dallas City Council. (*See* Plf. MSJ Resp. App. at 57, 122). The very next day, plaintiff learned that he had been selected for termination as part of a City-wide reduction in force ("RIF"). (*See* Def. MSJ App. at 296, 299, 1010-11 ¶ 7). Upon official notification of this action, plaintiff filed a second EEOC charge complaining of his termination. (*Id.* at 569-70). Ramirez denied plaintiff's final three grievances on September 18, 2009. (*Id.* at 434-35, 438, 442-43). Four days later, on September 22, 2009, plaintiff appealed the denials of all six grievances to Assistant City Manager Forest Turner. (*See* Plf. MSJ Resp. App. at 61-72). On September 30, 2009, plaintiff and three other senior electronic technicians were terminated in the RIF. (*See* Def. MSJ App. at 452; Plf. MSJ Resp. App. at 274). Turner subsequently dismissed all six grievance appeals and informed plaintiff that, as a former employee, he had no further appeal rights. (*See* Def. MSJ App. at 451).

After he was notified of his termination, plaintiff applied for nine different vacancies through the City's Civil Service Department. (*See* Def. MSJ App. at 344-45). Although plaintiff states that he was qualified for all nine positions, he was not hired or even interviewed for any of the vacancies. (*See id.* at 348-49). That prompted plaintiff to file yet another charge of discrimination with the

EEOC. (*Id.* at 582). After the EEOC issued right-to-sue letters, plaintiff sued the City in state district court under the Texas Whistleblower Act ("TWA"), Tex. Gov't Code Ann. § 554.001, *et seq.*, and for free speech retaliation in violation of the federal and Texas constitutions. Defendant timely removed the case to federal court, and plaintiff amended his complaint to assert additional claims for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.* Defendant now moves for summary judgment as to all claims and causes of action.[2]

II.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of a genuine fact issue. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). This may be done by "pointing out 'the absence of evidence supporting the nonmoving party's case.'" *Id.*, quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.), *cert. denied*, 113 S.Ct. 98 (1992). By contrast, a movant who bears the burden of proof at trial must establish "beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). Once the movant meets its initial burden,

---

[2] In a separate motion, defendant asks the court to strike factual assertions or statements in plaintiff's summary judgment response brief that are not supported by the evidence or citations to the record. The court will not consider argument by either party that is not supported by competent summary judgment evidence. Consequently, defendant's motion to strike [Doc. #45] is denied as unnecessary.

the nonmovant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

A.

The court first addresses plaintiff's Title VII claims. Defendant argues that plaintiff has failed to establish a *prima facie* case of race discrimination because there is no evidence that he was treated less favorably than a similarly situated employee outside the protected class. With respect to plaintiff's retaliation claim, defendant contends that many of the alleged retaliatory acts are not adverse employment actions and, in any event, plaintiff cannot establish a causal link between protected activity and the adverse actions.

1.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" *See* 42 U.S.C. § 2000e-2(a)(1). To prevail on his discrimination claim, plaintiff must present direct or circumstantial evidence that his race was a motivating factor for an adverse employment action. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004). Where, as here, a plaintiff relies on circumstantial evidence, he must establish a *prima facie* case of discrimination, which "creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). A *prima facie* case of race discrimination requires proof that the plaintiff:

(1) is a member of a protected class; (2) was qualified for the position held or sought; (3) was subjected to an adverse employment action; and (4) was treated less favorably than a similarly situated employee outside the protected class. *See Okoye v. Univ. of Tex. Houston Health Science Cntr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

As evidence of disparate treatment, plaintiff argues that he was treated less favorably than Michael Driggars, a Caucasian employee, for violating similar City policies. Plaintiff maintains that he was verbally reprimanded by Alex Wong and lost his designation as a "lead technician" for violating a policy that prohibited employees from parking a personal vehicle next to a City vehicle, whereas Driggars received only a "Letter of Counseling" for violating a policy that prohibited employees from loading material from City property to a personal vehicle without authorization. (*See* Plf. MSJ Resp. App. at 279, 515-16; Def. MSJ App. at 393). However, nothing in the record even remotely suggests that plaintiff was removed as a "lead technician" because he violated the parking policy. Plaintiff was reprimanded by Wong for parking his car next to a City vehicle on January 14 or 15, 2009. (*See* Def. MSJ App. at 88). He was not stripped of his "lead technician" duties until March 12, 2009, approximately ten days after failing to follow the chain of command in reporting his concerns that Lisa Stevenson had been retaliated against for accusing Driggars of theft. (*See* Plf. MSJ Resp. App. at 114-15, 336). Unlike plaintiff, Driggars was never accused of failing to follow proper reporting procedures. If anything, plaintiff, who received only a verbal reprimand, was treated *more favorably* than Driggars, who received a formal letter of counseling, for violating the parking policy. Under these circumstances, there is no disparate treatment as a matter of law. *See Toronka v. Continental Airlines, Inc.*, 411 Fed.Appx. 719, 723-24, 2011 WL 493101 at *3 (5th Cir. Feb. 14, 2011) (critical inquiry in context of disparate treatment claim is

whether employer treated employee outside protected class more favorably "in response to nearly identical misconduct").

2.

To establish a *prima facie* case of retaliation, plaintiff must show that: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). Once plaintiff establishes a *prima facie* case, defendant must articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* at 557. If defendant meets its burden of production, plaintiff must come forward with sufficient evidence that the proffered reason is a pretext for retaliation. *Id.* Ultimately, plaintiff must prove that "but for" the protected activity, the adverse employment action would not have occurred. *See McDowell v. Home Depot, U.S.A., Inc.*, No. 3-02-CV-1294-D, 2004 WL 594101 at *7 (N.D. Tex. Mar. 9, 2004), *citing Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).

Defendant does not challenge on summary judgment whether plaintiff engaged in protected activity.[3] Instead, defendant argues that plaintiff cannot prove a Title VII violation because many of the retaliatory acts allegedly taken against him were not adverse employment actions and, in any event, he cannot establish a causal link between any protected activity and the adverse actions.

---

[3] An employee engages in protected activity if he either: (1) opposes an employment practice made unlawful by Title VII, or (2) makes a charge, testifies, assists, or participates in any manner in an investigation, proceeding, or hearing under Title VII. *See Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996), *citing* 42 U.S.C. § 2000e-3(a). Filing a charge of discrimination with the EEOC clearly constitutes protected activity. *See Starr v. Oceaneering Int'l, Inc.*, No. 4-09-CV-0204, 2010 WL 644445 at *12 (S.D. Tex. Feb. 18, 2010), *citing Miller v. Potter*, 359 Fed.Appx. 535, 536, 2010 WL 45865 at *1 (5th Cir. Jan. 7, 2010). It is less clear whether filing an internal grievance is protected activity within the meaning of the statute. *See Davis v. Dallas Indep. Sch. Dist.*, No. 11-10090, 2011 WL 5299663 at *7 (5th Cir. Nov. 4, 2011) (citing cases).

a.

An adverse employment action in the context of a Title VII retaliation claim must be "materially adverse" -- that is, one that would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009), *quoting Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006). The purpose of this objective standard is "to separate significant from trivial harms" and "filter out complaints attacking the ordinary tribulations of the workplace[.]" *Id.*, *quoting Burlington Northern*, 126 S.Ct. at 2415. Thus, "petty slights" and "minor annoyances" are typically not considered adverse employment actions. *See Burlington Northern*, 126 S.Ct. at 2415. Even when an adverse action is intended by the employer as retaliation, it still must satisfy this materiality standard. *See Stewart*, 586 F.3d at 331.

Plaintiff identifies five different adverse employment actions in support of his retaliation claim: (1) his termination; (2) the City's refusal to rehire him; (3) the removal of his "lead technician" duties; (4) his assignment to sweep the parking lot; and (5) his temporary assignment to retrieve flashers and sandbags. (*See* Plf. MSJ Resp. Br. at 4). Judged against the *Burlington Northern* standard, it is clear that plaintiff's termination and the City's failure to rehire him were adverse employment actions. Indeed, defendant does not argue otherwise. There is also at least a fact question as to whether a reasonable employee would find the removal of "lead technician" duties and the assignment to clean the parking lot to be "materially adverse." Certainly, it is possible that those kinds of employment actions might "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *See Stewart*, 586 F.3d at 331. The court reaches a different conclusion with regard to plaintiff's assignment to retrieve flashers and sandbags. While the flashers

were heavy and usually handled by two people, (*see* Plf. MSJ Resp. App. at 358), the record is devoid of any evidence showing the number of times plaintiff actually retrieved the flashers and sandbags, or whether he ever had to do so. Moreover, plaintiff had this assignment for only six weeks. (*See* Def. MSJ App. at 406, 409). On these facts, the court determines as a matter of law that plaintiff's temporary assignment to retrieve flashers and sandbags was not "materially adverse." *See Magiera v. City of Dallas*, 389 Fed.Appx. 433, 438, 2010 WL 3168211 at *3 (5th Cir. Aug. 11, 2010) (denial of lateral transfer opportunities and overtime assignments were not "materially adverse" absent any evidence or explanation as to how those actions negatively affected plaintiff's status, benefits, prestige, or responsibilities).

b.

The requirement that plaintiff show a "causal link" between a protected activity and an adverse employment action at the *prima facie* stage of a retaliation case is much less stringent than the "but for" causation a jury must find. *See Penalver v. Resource Corp. of America*, No. 3-10-CV-0280-D, 2011 WL 1885988 at *5 (N.D. Tex. May 18, 2011) (citing cases). "Close timing between an employee's protected activity and an adverse action against [him] may provide the 'causal connection' required to make out a prima facie case of retaliation." *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001), *quoting Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). Here, all the adverse employment actions occurred within a few weeks or months after plaintiff filed grievances or complained about discrimination or retaliation in the workplace. Specifically:

- plaintiff was assigned to clean the parking lot "right after" filing his first grievance, (*see* Def. MSJ App. at 181, 371-73);

-10-

- plaintiff was stripped of his "lead technician" duties within two weeks of appealing the denial of his first grievance to Galceran, (*see id.* at 398-402, 415; Plf. MSJ Resp. App. at 336);

- plaintiff learned that his job was selected for elimination in a City-wide RIF four months after filing an EEOC charge, and just one day after his speech to the Dallas City Council, (*see* Def. MSJ App. at 296, 566; Plf. MSJ Resp. App. at 122); and

- the City refused to interview plaintiff for nine different vacancies in the weeks following his termination, (*see* Def. MSJ App. at 296, 344-45, 348-49).

The close timing between these adverse employment actions and plaintiff's protected activity is sufficient to satisfy the "causal link" requirement at the *prima facie* stage. *See, e.g. Evans*, 246 F.3d at 354 (noting that time lapse of up to four months has been found sufficient to satisfy causal connection at *prima facie* stage of retaliation case).

c.

The focus of defendant's "causal link" argument is that plaintiff cannot prove "but for" causation. The court will consider this argument in the context of each relevant adverse employment action.

i. <u>Parking Lot Clean-Up</u>

Defendant denies that plaintiff was "singled out" to clean the parking lot. Rather, defendant maintains that City employees, including plaintiff, were assigned to clean the parking lot on a rotating basis in preparation for an environmental audit scheduled for April 2009. (*See* Def. MSJ Br. at 8-9, 16, 22-23). While other employees may have been assigned that task, plaintiff testified at his deposition that he was the only person who actually cleaned the parking lot. (*See* Def. MSJ App. at 180). According to plaintiff:

> Well, the white employees were not going out to the parking lot, cleaning the parking lot. I never saw Andrew Perez clean the parking lot, Jim Wilkins never cleaned the parking lot, and it was a fact that they signed the log as if they did, but trash was still on the parking lot, so I took pictures of the parking lot to show that the parking lot was not clean.

(*Id.* at 178). If, as plaintiff suggests, his supervisors knew that other employees were shirking their clean-up duties, which meant that plaintiff was the only employee who actually had to clean the parking lot, such evidence may support plaintiff's concern that Alex Wong "used that established policy to harass and retaliate against me." (*Id.* at 178). Indeed, elsewhere in his deposition, plaintiff testified that Wong told him in an email that "it was my duty and my responsibility to keep the parking lot clean." (*Id.* at 181). To plaintiff's knowledge, no one else in his department received a similar email. (*Id.* at 180). That an environmental audit was looming would not justify assigning this menial task to plaintiff alone or selectively enforcing the assignments. Thus, there is sufficient evidence to raise a fact question as to whether defendant's proffered explanation for this adverse employment action is false.

    ii.    <u>Removal of "Lead Technician" Designation</u>

Defendant argues that Elizabeth Ramirez made the decision to remove plaintiff's "lead technician" designation to ensure fairness by rotating leadership opportunities among the other senior electronic technicians, and to de-escalate tensions in the workplace by reducing interactions between Michael Driggars and plaintiff. (*See* Def. MSJ Br. at 16, 22, *citing* Def. MSJ App. at 1015, ¶ 12). However, when asked at his deposition to explain why it became a concern to rotate the "lead technician" position in March 2009, Wong responded:

> In the -- in the past few months, that -- in that period of time, I noticed that Mr. Stephens spent a lot of time involving personnel matters even when Robert Espinoza is there. And those, I advised to Mr. Stephens, I say that these issue [*sic*] need to be brought up to Robert Espinoza and have him be the one handling this. And this is the proper chain of command and then [*sic*] reporting procedure. And then I advised Mr. Stephens to follow the procedure.

(Plf. MSJ Resp. App. at 209). A reasonable juror could interpret this evasive answer, and the thinly-disguised reference to plaintiff's involvement in "personnel matters," as evidence that Wong made the decision to rotate "lead technician" duties among other employees in the department because plaintiff complained of discrimination and retaliation weeks earlier. This evidence is sufficient to create a fact issue for trial.

    iii.    <u>Termination</u>

Defendant claims that plaintiff was terminated as part of a City-wide RIF. (*See* Def. MSJ Br. at 18, *citing* Def. MSJ App. 1010-11, ¶ 7). While a RIF, by itself, is "a legitimate, nondiscriminatory reason for discharge," *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996), an employer may not use a RIF as a "convenient excuse for terminating an employee on a . . . retaliatory basis." *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 51 (1st Cir. 2010). "Whether or not trimming the fat from a company's organizational chart is a prudent practice in a particular business environment, the employer's decision to eliminate *specific positions* must not be tainted by a discriminatory animus." *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 422 (1st Cir. 1996) (emphasis added). Thus, the fact that plaintiff was terminated as part of a RIF is not dispositive.

Defendant also references a Civil Service rule that requires layoff decisions to be based on seniority. Because the four employees terminated in the RIF had less seniority than other senior electronic technicians who kept their jobs, defendant maintains that the layoff decision was justified.

(*See* Def. MSJ Br. at 14-15, *citing* Def. MSJ App. at 608-09, 712). But that explanation does not address why the *category* of senior electronic technicians was targeted for layoff. Indeed, Robert Espinoza, who supervised the electronic technicians, testified that it would have made "more sense" to lay off lower-level technicians "[b]ecause a senior tech could do both the field work and bench work, and at the time . . . we repaired our own equipment." (Plf. MSJ Resp. App. at 389-90). It is also significant that the two senior electronic technicians with the most seniority selected for termination -- plaintiff and Gwendolyn Peoples -- had both filed grievances alleging discrimination. (*See* Plf. MSJ Resp. App. at 79, 218-19, 274). This evidence could suggest to a reasonable juror that City managers unlawfully used the RIF as a "convenient excuse" to effectuate the termination of employees, including plaintiff, who had complained of discrimination. *See Collazo*, 617 F.3d at 51.

    iv.    <u>Failure-To-Hire</u>

The court reaches a different conclusion with respect to plaintiff's failure-to-hire claim. Even if plaintiff could establish a *prima facie* case of retaliation,[4] he has failed to adduce any evidence to rebut the legitimate explanation offered by defendant as to why he was not rehired -- that plaintiff was not the most qualified applicant and because some of the vacancies were filled by the time he applied. (*See* Def. MSJ Br. at 18-19, 22). The closest plaintiff comes to rebutting this explanation is evidence that Jim Wilkins, a Caucasian with less seniority, was hired by the Water Department after the RIF. (*See* Plf. MSJ Resp. App. at 382; Def. MSJ App. at 352). However, there is no evidence that plaintiff and Wilkins applied for the same job. In fact, when asked at his deposition

---

[4] In order to establish a *prima facie* case of retaliation, plaintiff must prove that "he applied for positions for which he was qualified and for which he was not hired." *Okpala v. City of Houston*, 397 Fed.Appx. 50, 56, 2010 WL 3937351 at *4 (5th Cir. Oct. 4, 2010), *citing Burdine*, 101 S.Ct. at 1094 n.6. Not only is there no evidence of the qualifications required for any of the job vacancies posted by the City after plaintiff received notice of his termination, but plaintiff has not even identified the positions for which he applied. Without such evidence, plaintiff cannot prove his failure-to-hire retaliation claim.

if he applied for the same position as Wilkins, plaintiff responded, "I'm not sure." (Def. MSJ App. at 352). Defendant is therefore entitled to summary judgment as to this aspect of plaintiff's retaliation claim.

B.

Defendant also moves for summary judgment on plaintiff's free speech retaliation claim.[5] A plaintiff must satisfy four elements to recover on such a claim: (1) he suffered an adverse employment action; (2) the speech must involve a matter of public concern; (3) plaintiff's interest in commenting on matters of public concern must outweigh the defendant's interest in promoting efficiency; and (4) the protected speech must have motivated the defendant's actions. *See Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 563 (5th Cir. 2003), *citing Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999). If the plaintiff carries this burden, the defendant must show, by a preponderance of the evidence, that it would have taken the same action against the plaintiff even in the absence of the protected conduct. *See Lukan v. North Forest Indep. Sch. Dist.*, 183 F.3d 342, 346 (5th Cir. 1999), *citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-87, 97 S.Ct. 568, 574-76, 50 L.Ed.2d 471 (1977).

The summary judgment evidence shows that plaintiff was notified of his termination as part of a City-wide RIF after he voiced concerns about discrimination and retaliation in a speech before the Dallas City Council. (*See* Plf. MSJ Resp. App. at 122). Termination is clearly an adverse employment action. *See Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000). Defendant does not dispute that plaintiff's speech involved a matter of public concern, or that his interest in commenting on discrimination and retaliation outweighed any interest in promoting efficiency.

---

[5] Although plaintiff pleads a free speech retaliation claim under both the federal and Texas constitutions, (*see* Plf. Am. Compl. at 13-14, ¶¶ 59-64), defendant moves for summary judgment only as to the federal claim. (*See* Def. MSJ Br. at 26-30).

Instead, defendant maintains that there is no evidence that plaintiff was terminated in retaliation for exercising his free speech rights. The court disagrees. Over the course of seven months, plaintiff filed six grievances and two EEOC complaints. His protestations against discrimination and retaliation in the workplace culminated in a speech before the Dallas City Council on August 5, 2009. The very next day, plaintiff was notified that his job would be eliminated. (*See* Def. MSJ App. at 296, 298-300). A reasonable jury could infer from this timeline of events that plaintiff's speech -- whether during the grievance process, in his EEOC charge, or before the Dallas City Council -- was a "motivating factor" in the termination decision. *See Sparks v. Region VII Mental Health-Mental Retardation Comm'n*, No. 1-08-CV-216-SA-JAD, 2009 WL 3615058 at *4 (N.D. Miss. Oct. 27, 2009) (close temporal proximity supported inference of causation where plaintiff was terminated two months after making political speech). Because plaintiff has met his initial burden of proof, defendant is not entitled to summary judgment unless it proves "beyond peradventure" that plaintiff would have been terminated regardless of his protected conduct. That quantum of proof does not exist here. The mere fact that Lisa Stevenson, another African-American employee, was *not* laid-off as part of the City-wide RIF despite filing an EEOC charge is not conclusive of the issue.

## RECOMMENDATION

Defendant's motion for summary judgment [Doc. #32] should be granted in part and denied in part. Plaintiff has failed to establish a genuine issue of material fact with respect to his Title VII race discrimination claim, and his Title VII retaliation claims based on the temporary assignment to retrieve flashers and sandbags and the failure of defendant to rehire him after the RIF. In all other respects, summary judgment should be denied.[6]

---

[6] The court is unable to determine whether defendant is entitled to summary judgment with respect to plaintiff's TWA claim because neither party has adequately briefed its arguments. In particular, defendant wholly fails to address the threshold issue of whether limitations and exhaustion are jurisdictional, which, in turn, affects which party has the

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 2, 2012.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

---

burden of proof. *Compare Breaux*, 205 F.3d at 162 (holding that TWA exhaustion requirement is jurisdictional), *Garrett v. Judson Indep. Sch. Dist.*, 299 Fed.Appx. 337, 341-42, 2008 WL 4851317 at *4 (5th Cir. Nov. 10, 2008) (same), *Univ. of Houston v. Barth*, 178 S.W.3d 157, 161-62 (Tex. App. -- Houston [1st Dist.] 2005, no pet.) (noting disagreement among courts, but ultimately holding that TWA limitations requirement is jurisdictional based on prior decisions), *with Castleberry Indep. Sch. Dist. v. Doe*, 35 S.W.3d 777, 782 (Tex. App. -- Fort Worth 2001, pet. dism'd w.o.j.), *abrog. on other grounds by Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835 (Tex. 2007) (holding that TWA limitations requirement is not jurisdictional); *Tex. Dep't of Mental Health & Mental Retardation v. Olofsson*, 59 S.W.3d 831, 833 (Tex. App. -- Austin 2001, pet. dism'd) (same); *Barth*, 178 S.W.3d at 165-67 (Bland, J., concurring) (discussing TWA exhaustion provision in light of legal precedents since 2000, and determining Texas Supreme Court would find that exhaustion requirement is not jurisdictional). *See also Univ. of Tex. Med. Branch at Galveston v. Barrett*, 159 S.W.3d 631, 632-33 (Tex. 2005) (expressly declining to decide whether TWA exhaustion requirement is jurisdictional). Plaintiff ignores the exhaustion issue entirely and only briefly mentions limitations. Rather than invest the time and resources necessary to research these issues on its own, which will only further delay the proceeding, the court declines to consider plaintiff's TWA claim on summary judgment.